IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| TRANITA STANLEY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>JELENA MCWILLIAMS, CHAIRMAN )<br>FEDERAL DEPOSIT INSURANCE )<br>CORPORATION )<br>)<br>Defendant. ) | Case No. 20-00220-CV-W-HFS |

**ORDER**

Defendant, Jelena McWilliams, Chairman Federal Deposit Insurance Corporation ("FDIC"), has filed a motion seeking to dismiss claims One, Two, Three, and Five of the complaint, pursuant to Fed.R.Civ.P. 12(b)(1).

Background

Plaintiff, Tranita Stanley, was a federal employee for 18 years, and around October 17, 2016, she began working as a Consumer Affairs Specialist in the Consumer Response Center with the FDIC. (Amended Complaint: ¶ 15). Plaintiff alleges that in early 2017, she contacted Mark

1

Pearce, Dir. of Depositor and Consumer Protection, about her concerns of race discrimination at the Kansas City Regional Office, stating that she was told on her first day of work that black people were rarely hired at that office, were not promoted, and that she should "watch her back." (Id). Plaintiff also alleged that her first-line supervisor, Chief Kristin Strong, treated her in an unwelcome manner. (Id).

Within weeks of her hire, plaintiff was called to meet with Chief Strong regarding complaints from co-workers that plaintiff engaged in inappropriate touching, and in December of 2017, plaintiff submitted a formal EEO complaint of race discrimination, retaliation, and hostile work environment. (Id: ¶ 16). Plaintiff states that during her one and half years of employment with FDIC, all of her supervisors and co-workers were Caucasian with the exception of a Hispanic employee. (Id: ¶¶ 17-18).

Plaintiff alleges that within weeks of her hire, Chief Strong assigned menial work assignments including stocking and preparing coffee and the coffee station for employees, while her white counterparts were assigned tasks which were career related such as preparing travel

arrangements, ordering office supplies and timekeeping duties. (Id: ¶¶ 19-20). And, when plaintiff thanked Chief Strong for hiring her, Lori Strong responded that plaintiff should not be an "ass-kisser." (Id: ¶ 21).

Plaintiff also alleges that Chief Strong refused to allow her to telework although other employees teleworked; that co-workers Mr. Teasdale, Ms. Starnes and Ms. Harding monitored her departure time from work on a daily basis; and that Mr. Teasdale falsely accused her of "keying" his car. (Id: ¶¶ 22-24). Mr. Teasdale also stated that plaintiff was threatening and scary, and he and co-worker John Wasserman accused plaintiff of inappropriately touching them by entering their cubicles and rubbing their shoulders, making suggestive sexual moves with chocolate candy, inviting them to her home, and touching them with her breast. (Id: ¶ 26). Both co-workers also reported that plaintiff made disparaging remarks about veterans and police officers were considered disruptive to the work environment. (Id: ¶ 27). Although plaintiff denied the accusations she was disciplined with a Letter of Admonishment dated September 15, 2017, which she refused to sign. (Id: ¶ 28).

Co-worker Ginger Harding accused plaintiff of sabotaging her work and complained of plaintiff's work errors to Supervisor Beverly Shuck; and although Ms. Harding later apologized to plaintiff, Ms. Shuck suggested that plaintiff take a class called Communicating With Tact, Diplomacy and Professionalism. (Id: ¶¶ 29-32).

From August thru September 2018, plaintiff was on sick leave due to surgery, and upon her return to work co-worker Mary Moreno-Garcia advised her that Joni Creamean, the Associate Director of Consumer Protection in Washington D.C., came to the office and made inquiries as to whether plaintiff displayed hostile or threatening behaviors. (Id: ¶ 33). Ultimately, the Senior Management Team assigned plaintiff to a secretarial position at the Washington D.C. office. (Id: ¶¶ 36-37). On March 25, 2019, Elizabeth Ortiz, Deputy Director of Consumer and Community Affairs, DCP, FDIC Headquarters, sent plaintiff a letter advising that if she did not report to the assigned location she would be involuntarily separated. (Id: ¶ 38). On May 13, 2019, Ms. Ortiz issued a letter removing plaintiff from federal service effective May 18, 2019, for failure to report to the directed assignment. (Id: ¶ 39). Plaintiff states that

she subsequently obtained employment with another federal agency, but FDIC refused to transfer her personnel records concerning employee benefits and refused to provide her W-2. (Id: ¶ 40).

Plaintiff has alleged workplace harassment, hostile work environment, and retaliation in violation of Title VII of the Civil Rights Act of 1964.

Defendant seeks dismissal of the claims asserted in Count One, hostile work environment based on retaliation; in Count Two, hostile work environment; Count Three, discriminatory discipline; and Count Five, race discrimination. Specifically, defendant argues that this court lacks subject matter jurisdiction because these claims are barred by plaintiff's agreement to pursue remedies through the grievance procedure set out in the collective bargaining agreement.

Standard of Review

Dismissal pursuant to Rule 12(b)(1) is appropriate when the court lacks subject matter jurisdiction over a claim, and when a plaintiff

claims that subject matter exists he or she has the burden of establishing it. Jones v. Foxx, 2018 WL 705665 *1 (D.Ks.). Because federal courts are courts of limited jurisdiction, however, there is a strong presumption against federal jurisdiction. Id.

## Discussion

The Civil Service Reform Act of 1978 (CSRA) establishes labor-management-relations practices for most federal workers. Heimrich v. Department of the Army, 947 F.3d 574, 577 (9th Cir. 2020); citing, 5 U.S.C. § 7101 et seq. Recognizing that the right of employees to organize, bargain collectively, and participate through labor organizations safeguards the public interest, the CSRA authorizes specified employees to form, join or assist any labor organization. Id. The CSRA provides for the formation of collective bargaining agreements (CBAs) between labor organizations and federal agencies, and it requires that the CBAs provide procedures for the settlement of grievances which fall within its coverage with several noted exceptions. Id.

One such exception in the Heimrich case – and relied on by defendant here – is 5 U.S.C. § 7121(d), which provides that where the employee is affected by one of the discriminatory practices listed under 5 U.S.C. § 2302(b)(1), and where the applicable CBA allows employees to raise discrimination claims, 7121(d) establishes two alternative means by which to raise the matter. Id, at 578.

The aggrieved employee may, as one option, raise the matter by filing a grievance under the negotiated procedure described in the CBA "the negotiated procedure." Id. Or, alternatively, the employee may raise the matter under the statutory procedure by filing a formal complaint with the employing agency's EEO office (the statutory procedure." Id.

The employee shall be deemed to have exercised his option under § 7121(d) when he or she files the grievance or the EEO complaint, whichever first occurs. Id. These procedures are mutually exclusive, meaning that an aggrieved employee seeking redress for a prohibited personnel practice under the CSRA may raise the matter under a statutory procedure or the negotiated procedure, *but not both*. Id.

7

In support of its contention, defendant notes that on October 13, 2017, plaintiff exercised her rights under Article 47 of the FDIC-CBA by filing a written grievance in which she denied the accusations made by co-workers and management against her, requested that the Letter of Admonishment be deleted from her file, and alleged that the accusations were discriminating, racist and sexist. (Doc. 11: Supporting Suggestions, Attachment 1 to Exh. C).[1]

On December 8, 2017, plaintiff filed a formal administrative EEO complaint in which she alleged discrimination based on race. (Doc. 11: Attachment 2 to Exh. A); and by letter also dated December 8, 2017, plaintiff complained of the racist and hostile work environment at the Kansas City office. (Id).[2] Defendant states that although plaintiff pursued appeals through Step Three of the grievance process, she did not pursue an appeal at Step Four for the matter to be referred to binding arbitration, which was then deemed abandoned. (Doc. 11: Attachment 1,

---

[1] By letter dated Oct. 27, 2017, Kristin Strong acknowledge receipt of plaintiff's grievance submitted pursuant to Article 47 of the CBA, and noted that plaintiff declined her right to a Step One meeting; after careful consideration, the grievance was denied. (Doc. 11: Attachment 1 to Exh. D).
  On Nov. 15, 2017, plaintiff appealed the decision to Step Two (Doc. 11: Attachment 1 to Exh. E).; which was also denied by letter dated Dec. 11, 2017. (Doc. 11: Attachment 1 to Exh. F).
[2] Plaintiff appealed the denial of her Second Step appeal to Step Three of the grievance (Doc. 11: Attachment 1 to Exh. G); which also was denied by letter dated Jan. 18, 2018. (Doc. 11: Attachment 1 to Exh. H).

Declaration of William Carey, Human Resources Officer for the FDIC Kansas City Regional Office).

Instead, on July 22, 2019, plaintiff filed a second administrative EEO complaint alleging race discrimination and reprisal. (Doc. 11: Attachment 2 to Exh. B). Plaintiff attached a document signed on May 13, 2019, in which she complained of discrimination based on race, color, and reprisal, and that she was terminated because she reported the harassment, discrimination, and slander of her name. (Id.).

Defendant does not dispute plaintiff's right to raise claims in the formal EEO complaint of July 22, 2019, but contends that the discrimination claims raised in the initial 2017 EEO complaint "statutory procedure" are barred by plaintiff's election of remedies to assert those claims previously through the "grievance procedure" in October of 2017.

Government counsel's position on behalf of defendant Agency contrasts with the Agency's position during the lead-up to litigation. The Final Agency Decision of 1/9/2020 takes note of the earlier alternative grievance procedure that was not exhausted and affirms a partial dismissal

9

of plaintiff's claim "because Complainant raised the same issue in her formal complaint that was previously raised in Complainant's prior grievance"—but the dismissal was very narrow in scope, relating simply to "incident A13". That reference was to her challenge to the Letter of Admonishment of September 15, 2017. Doc. 3-1, p. 23. The Final Agency Decision, contrary to what defendant seeks here, dealt at considerable length with the merits of the current counts in the Complaint, which counsel now contends is barred from review because the grievance was never exhausted. The Agency action in turn follows the Partial Acceptance Letter of January 30, 2018, which accepted the EEO claim except for Incident A13, which was "dismissed …for raising the same matter prior to the formal complaint in a negotiated grievance procedure…" Although that narrow item (referred to as a LOA) was dismissed, "Complainant was advised" that incident A13 "may be used as background information in support of the accepted claims" Id pp. 3-4.

    I agree procedurally with the Agency and not with current counsel because I am satisfied that "the matter" contested in the grievance was simply the LOA, which plaintiff wanted withdrawn from her personnel

records. Defendant's counsel now argues that each of eleven complaints made by plaintiff that challenges the LOA should be treated as a separate "matter" that is now foreclosed. Doc 11-1, Exh. C. But none on of them seeks any relief other than the basic request for withdrawal of the LOA, which the Agency and I conclude was the "matter" in controversy.. In the absence of plaintiff's seeking any other relief, the other issues were simply proposed evidentiary issues, not "the matter" in controversy. Defendant cites no cases that support its contention. The few appellate cases that are briefed relate to such issues as terminations that were the issues in contest both in grievances and in EEO complaints and physical work environment issues that were essentially the same in grievances and in the EEO complaint. See, e.g.. Heimrich v. U.S. Dept. of the Army, 947 F.3d 574 (9th Cir. 2020); Guerra v. Cuomo, 176 F.3d 547 (D.C.Cir. 1999).

In fairness to EEO complainants, few of whom have lawyers at an early stage, and to avoid legalism such as "compulsory counterclaims" and "splitting causes of action", the plain meaning of the statutory prohibition on presenting the same "matter" by grievance and EEO complaint should be followed—as the Agency did here.

11

Thus, defendant's motion for partial dismissal (Doc 11) is hereby DENIED, except that plaintiff is barred from damages or equitable relief based on the issuance of the Letter of Admonishment dated September 15, 2017 .

 s/ Howard F. Sachs
HOWARD F. SACHS
UNITED STATES DISTRICT JUDGE

April 7, 2021

Kansas City, Missouri